No. 26250

**The People of the State of Colorado v. Marvin Noel Pearson**

(546 P.2d 1259)

Decided March 8, 1976.                    Rehearing denied March 29, 1976.

John P. Moore, Attorney General, John E. Bush, Deputy, Gregory L. Williams, Assistant, Joseph M. Goldhammer, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Thomas M. Van Cleave III, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

Defendant Pearson was found guilty by a jury of first-degree murder[1] and was sentenced to life imprisonment. The allegations of error which the defendant asserts in this appeal have no merit as a basis for reversal of his conviction. We therefore affirm the judgment of the trial court.

The following facts are undisputed. In responding to a missing persons report on John Henry, Northglenn police officers found him stabbed to death in his apartment. His nude body was tied to a chair. The officers sent out a teletype description on the victim's truck which was missing from his residence. Defendant was arrested in New Mexico the following day. He was driving the victim's truck at the time. After being advised of his rights, he chose to remain silent. However, he signed a consent form for a search of his motel room where several items belonging to the victim were found. Defendant's shirt bore a bloodstain identified at trial as being of the same type of blood as the victim's.

A Northglenn police officer traveled to New Mexico to return the defendant who had waived extradition to Colorado. This officer, while examining the impounded truck, seized a fishing knife which was lying on the front seat. After his return to Colorado, defendant made unsolicited statements to police officers who were booking him into jail. These statements were introduced by the prosecution at trial to link the defendant to the crime.

Defendant was charged with first-degree murder. He pleaded not guilty and not guilty by reason of insanity. Following a court-ordered psychiatric examination, defendant withdrew the insanity plea and proceeded to trial on the first-degree murder charge.

I.

The defendant argues that first-degree murder for which he was convicted is indistinguishable from second-degree murder and therefore

---

[1] 1971 Perm. Supp., 40-3-102(1)(a), C.R.S. 1963. Now section 18-3-102(1)(a), C.R.S. 1973.

his due process and equal protection rights were violated. He asserts that the requisite mental state, "premeditated intent," in the first-degree murder statute[2] is no different than the mental state, "intentionally" as required in the second-degree murder statute.[3]

We rejected this exact argument in *People v. Sneed*, 183 Colo. 96, 514 P.2d 776 (1973), in which we found the first-degree murder statute to be constitutional. In *Sneed*, we held that a premeditated act required the formulation of a design before the commission of the act, or in other words, an appreciable length of time must elapse between the forming of the intent to do the act and the doing of the act itself to allow deliberation, reflection and judgment. In this manner, this court concluded that "premeditated intent" and "intentionally, but without premeditation" were sufficiently different elements to be a constitutionally acceptable basis for defining two distinct crimes.

■ The trial court did not have the benefit of *Sneed* at the time of trial, however. The defendant in his brief asserts the jury was not properly instructed on premeditation as pointed out in *Sneed*. The murder instructions were phrased in statutory language and included the statutory definition of "premeditation," which is "a design formed to do something at any time before it is done."[4]

We held in *Sneed* that when a defendant is charged with first-degree murder under the present murder statutes, a trial court must, when requested, give an instruction which explains for the jury the difference between "premeditated intent" as required in the first-degree murder statute and "intentionally" as required in the second-degree murder statute. We pointed out that where the issue in the trial of a first-degree murder charge is premeditation or not, the failure of the trial judge to properly instruct the jury in this respect would be reversible error. However, there is no error in this case because whether there was premeditation or not was never an issue. From the record of this case, and particularly from the defense closing argument, the only theory of defense was that the prosecution had not presented sufficient evidence to prove that *the defendant* committed this murder. The closing argument for the defendant stresses the proposition that in many respects the evidence is indicative of the possibility that some individual other than the defendant committed this crime. The manner in which it was committed establishes a considerable period for premeditation as defined in *Sneed*.

The instructions here were worded in the language of the statutes and included the statutory definition of "premeditation." We hold that, for the reason set forth in the preceding paragraph, these instructions were ade-

---

[2] 1971 Perm. Supp., 40-3-102(1)(a), C.R.S. 1963. Now section 18-3-102(1)(a), C.R.S. 1973.

[3] 1971 Perm. Supp., 40-3-103(1)(a), C.R.S. 1963. Now section 18-3-103(1)(a) C.R.S. 1973.

[4] 1971 Perm. Supp., 40-3-101, C.R.S. 1963. Now section 18-3-101(3), C.R.S. 1973.

quate under the facts of this case, and that the trial court did not commit reversible error in refusing to give the instruction suggested by the defendant on appeal. *See, e.g., People v. Dago*, 179 Colo. 1, 497 P.2d 1261 (1972); *Blincoe v. People*, 178 Colo. 34, 494 P.2d 1285 (1972); *Simms v. People*, 174 Colo. 85, 482 P.2d 974 (1971).

## II.

Defendant also argues that the trial court erred in denying his motion to suppress evidence taken from his motel room. Defendant testified that he was told by the New Mexico police officers that a search warrant could be obtained regardless of his consent to a search of his motel room, and he maintains that this threat invalidated his consent, and hence, the search.

We initially observe that where, as here, there is a disputed factual issue concerning the voluntariness of a consent, it is the province of the trial court, as the fact finder, to weigh the credibility of witnesses and resolve the questions in light of the circumstances surrounding that consent. *Capps v. People*, 162 Colo. 323, 426 P.2d 189 (1967). The trial court's finding of voluntariness, if supported by adequate evidence in the record, must be upheld on review. *People v. Pineda*, 182 Colo. 385, 513 P.2d 452 (1973).

In this case, the evidence clearly supports a knowing and voluntary consent. The defendant was advised of his rights; he read and signed a written consent form; and both officers present at the time of the consent testified that they never threatened the defendant with the possibility of obtaining a warrant. *See, e.g., People v. Hancock,* 186 Colo. 30, 525 P.2d 435 (1974); *People v. Reyes*, 174 Colo. 377, 483 P.2d 1342 (1971). Under such circumstances, the defendant cannot prevail on the assertion that his consent to the search of his motel room was involuntary.

## III.

Defendant next challenges the constitutionality of the warrantless search of the truck which he was driving, which search resulted in the seizure of a fishing knife lying on the front seat. He maintains that the search was unlawful because it was not conducted for purposes of an inventory, or justified because of exigent circumstances. We do not address these issues because defendant lacks standing to contest the constitutionality of this search of this truck which he stole.

To establish standing to challenge a search and seizure, the challenger has the burden of alleging and proving that he has a reasonable expectation of privacy against nonconsensual police intrusions. The party contesting the search has no standing unless he has an ownership or possessory interest in the premises. A possessory interest may be established by one lawfully in possession at the time of the search, or by one reasonably believing he has a claim of title to, or a colorable interest in the premises or vehicle. *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *Brown v. United States*, 411 U.S. 223, 93 S.Ct.

1565, 36 L.Ed.2d 208 (1973); *People v. Trusty*, 183 Colo. 291, 516 P.2d 423 (1973). In this case, defendant makes no allegation or showing that he had any colorable right, title, or interest in the victim's truck, or that at the time and place of the search he was lawfully in possession of the vehicle. The truck's registration was in the name of the victim and the evidence persuasively indicates that the truck was stolen. Since the evidence here strongly points to the fact that the defendant stole this vehicle, it must be concluded that he has no proprietary or possessory interest in the vehicle upon which he can base standing to challenge the legality of its search. *See, e.g., Meade v. Cox*, 310 F.Supp. 233 (W.D. Va. 1970), *aff'd on other grounds*, 438 F.2d 323; *Brisbane v. State*, 233 Ga. 339, 211 S.E.2d 294 (1974); *People v. Henenberg*, 55 Ill. 2d 5, 302 N.E.2d 27 (1973); *State v. Boster*, 217 Kan. 618, 539 P.2d 294 (1975); *State v. Boutot*, 325 A.2d 34 (Me. 1974); *State v. Damico*, 513 S.W.2d 351 (Mo. 1974); *State v. Maloney*, 111 R.I. 133, 300 A.2d 259 (1973); *Miller v. State*, 520 S.W.2d 729 (Tenn. 1975).

## IV.

Defendant also states that the trial court committed reversible error when it refused to suppress certain statements he made to the police. These statements were made by the defendant several hours after he had been advised in New Mexico by the Colorado officers of his rights and after he had elected to remain silent before consulting with his attorney. Upon returning to Colorado, and during the booking procedure, defendant unexpectedly asked one of the officers if he could ask a question, to which the officer assented. Defendant then asked what time the victim died because if it were after a certain hour, he had an alibi. He then admitted to having been in the victim's apartment on the day of the murder. These statements were introduced at trial. Defendant was then re-advised of his right to remain silent. It is defendant's contention that the statements are inadmissible because he was not re-advised of his *Miranda* rights prior to making these statements and because they were made involuntarily as a result of the arduous trip back to Colorado during which he was continuously in the company of police officers.

The trial court determined that the statement was not given in response to police questioning or intimidation, but that it was volunteered by the defendant after he was advised of his constitutional rights on several occasions. The trial court then concluded that *Miranda* warnings were not required and that defendant's statement was voluntary and therefore admissible.

■ We agree with the trial court that *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), does not require new warnings to be given before a statement is given without the prompting of police questioning, nor does it require the exclusion of volunteered statements once the person has been taken into custody and elected initially to

remain silent. *People v. Allen*, 185 Colo. 90, 523 P.2d 131 (1974); *People v. Naranjo*, 181 Colo. 273, 509 P.2d 1235 (1973); *Howard v. People*, 173 Colo. 209, 477 P.2d 378 (1970); *People v. Smith*, 173 Colo. 10, 475 P.2d 627 (1970). What *Miranda* condemned were those cases in which the police refuse to take "no" for an answer and continue to question, harass or coerce the defendant into changing his decision to remain silent.

The record indicates that the officers scrupulously avoided asking defendant questions on the trip back to Colorado. No threat or coercion was apparent. Significantly, the circumstances justified the officers' surprise that the question proposed by the defendant would concern relevant facts of the case. In fact, when the officers became aware of the nature of defendant's statements, they in good faith immediately re-advised defendant of his rights. Consequently, the court's finding that the statement made by the defendant was volunteered and that new *Miranda* warnings were unnecessary is adequately supported by the record and will not be disturbed on review.

## V.

Defendant also argues that the trial court erred by denying his pretrial motion to discover from the prosecution any record of prior felony convictions of prosecution witnesses and any extrajudicial statements by witnesses endorsed on the information. Defense counsel concedes that Crim. P. 16 in effect at that time did not require the prosecution to disclose felony records of its witnesses nor did it require the prosecution to produce prior statements of witnesses before the witnesses testified. However, he contends that defendant has an absolute constitutional right to such evidence based on the right to confront witnesses.

With regard to the denial of discovery of felony records of prosecution witnesses, this court has held that the record must show some prejudice to defendant before reversal is granted. *People v. Lazare*, 189 Colo. 530, 542 P.2d 1290 (1975); *People v. Maestas*, 183 Colo. 378, 517 P.2d 461 (1973). The record here does not indicate such prejudice. Also, there is nothing before us to show that the district attorney had any record of prior convictions. Most of the prosecution witnesses were police officers or expert witnesses.

Defendant must also show that prejudice resulted from the failure of the trial judge to grant his motion to discover extrajudicial statements made by prosecution witnesses. *People v. Patterson*, 189 Colo. 451, 541 P.2d 894 (1975); *People v. Maestas, supra*. Defendant does not specify any possible instance in which statements of the prosecution witnesses were withheld from the defendant and which were not available or produced upon his request after direct examination of the prosecution witnesses.

Defendant's assignment of error with regard to discovery is therefore too speculative to justify a proper basis for reversal.

## VI.

■ Prior to trial, the trial court denied defendant's motion to suppress statements made by him to a psychiatrist in a court-ordered examination pursuant to his plea of not guilty by reason of insanity. (This plea was later withdrawn.) The court ruled that such evidence would be admissible at the trial for impeachment and rebuttal purposes only as specially provided under Colo. Sess. Laws 1972, ch. 44, 39-8-107(1) at 228,[5] if the defendant testifies in his own behalf. The thrust of the defendant's contention here is that the trial court improperly denied his suppression motion and thus, he claims he was prevented from testifying in his own behalf.[6]

In Colorado, when a defendant pleads guilty by reason of insanity, the court commits the defendant for a sanity examination.[7] The defendant is given the right to refuse to cooperate with the psychiatrist,[8] and he can elect to be examined by a psychiatrist of his choice.[9] The trial on the defendant's sanity precedes and is separate from the trial of his guilt.[10] Section 39-8-107(1) provides that any statements made by the defendant are admissible for limited purposes at the trial on defendant's guilt:

"Except as provided in this subsection (1), no evidence acquired directly or indirectly for the first time from a communication derived from the defendant's mental processes during the course of a court ordered examination . . . shall be admissible against the defendant on the issues raised by a plea of not guilty, if the defendant is put to trial on those issues, except to rebut evidence of his mental condition introduced by the defendant to show incapacity to form a specific intent; and, in such case, such evidence may be considered by the trier of fact only as bearing upon the question of capacity to form a specific intent and the jury, at the request of either party shall be so instructed. *If the defendant testifies in his own behalf upon the trial of the issues raised by the plea of not guilty, the provisions of this section shall not bar any evidence used to impeach or rebut the defendant's testimony.*" (Emphasis added.)

---

[5] Now section 16-8-107, C.R.S. 1973.

[6] Because of the disposition we make of this issue, we do not reach the question whether defendant has standing to raise the admissibility of his statements at trial when he failed to take the stand. We therefore do not decide whether defense counsel's bald allegation that defendant would have taken the stand but for the use of these statements would be enough assurance that defendant would have testified so that he could claim sufficient injury to raise the issue on appeal. We note that there is nothing in the record to indicate a different defense strategy other than making the prosecution prove its case without defendant taking the stand or offering any evidence.

[7] Now section 16-8-105, C.R.S. 1973.

[8] Now section 16-8-106(2), C.R.S. 1973.

[9] Now section 16-8-108, C.R.S. 1973.

[10] Now section 16-8-104, C.R.S. 1973.

Defendant argues that the emphasized portion of the statute should be interpreted as only permitting the admission of statements concerning his lack of capacity to form a specific intent and as not allowing the admission of statements concerning other issues of his guilt. He further contends that the trial court did not interpret the statute in this way and therefore, on the basis of either fallacious statutory construction or the unconstitutionality of the statute as interpreted by the trial court, this judgment should be reversed.

The defendant's interpretation of section 39-8-107(1) conflicts with the plain and express language of the statute which states in clear and uncomplicated language such statements may be used to impeach or rebut when the defendant testifies in his own behalf. Defendant's interpretation would make the latter part of the statute superfluous and inconsistent with the preceding portion which allows such statements to rebut evidence introduced by the defendant on his incapacity to form the requisite specific intent.

Defendant then argues that the threatened admission of such statements for rebuttal or impeachment purposes violated his right against self-incrimination because he was not informed of this possible use of his statements prior to his mental examination.[11] However, even assuming that such warnings are required, or that the examination was a type of custodial interrogation requiring that defendant be given the equivalent of *Miranda* warnings prior to his examination, such warnings are not required before the admission of such statements for impeachment purposes. In *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), the United States Supreme Court held that *Miranda* does not bar the prosecution from using earlier conflicting statements to impeach the defendant's testimony at trial, even if those earlier statements would be otherwise inadmissible in the prosecution's case in chief. The *Harris* court set forth the following rationale which significantly is applicable to the facts of this case:

"Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. . . . Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process. . . .

"The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances."

---

[11] We do not have the transcript of defendant's arraignment and are unable to determine the extent to which defendant was advised of his rights. There is some indication in the record that the psychiatrist advised him of his right not to make any statement.

*See also Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975).

Consequently, neither the United States Constitution nor the Colorado Constitution should be construed to allow the defendant to take the stand without the possibility of his credibility being impeached by his prior inconsistent statements. Where as here, the defendant makes statements to the psychiatrist upon the advice of his counsel and without physical coercion and intimidation, he cannot take the stand with his credibility immune from attack on the basis of his prior inconsistent statements.

Having concluded that the defendant's statements could be used for impeachment purposes, we do not reach the question whether such statements could also be used to rebut issues raised by defendant's testimony. Nothing in the record indicates that defendant would have taken the stand if the statements were introduced only for impeachment purposes and not for rebuttal. Hence, the defendant lacks sufficient standing to contest this part of the statute.

## VII.

Defendant also perceives error in the admission into evidence of certain photographs taken of the victim at the scene which depicted his wounds, the position of his body, and the manner in which his hands and feet were bound to a chair. He contends that several of the photographs were unnecessary and that the cumulative effects of the photographs were therefore inflammatory and prejudicial.

This assignment of error, however, was not contained in defendant's motion for a new trial and is therefore not preserved for review by this court. *See* Crim. P.33(a). While this court may recognize fundamental error in the record to avoid manifest injustice, the error must be clearly evident and plainly prejudicial to the rights of the accused. *People v. Pauldino,* 187 Colo. 61, 528 P.2d 384 (1974); *Land v. People,* 171 Colo. 114, 465 P.2d 124 (1970). In this case, defense counsel concedes the probative value of many of the photographs for establishing premeditation and design. When photographs are tied to the commission of the crime and have probative value, the fact that they tend to inflame cannot rule out admissibility. *See e.g., People v. Strohm,* 185 Colo. 260, 523 P.2d 973 (1974); *People v. Lowe,* 184 Colo. 182, 519 P.2d 344 (1974). If, however, the inflammatory nature of the photographs far outweighs the probative value, admissibility would be properly refused. Or, where the cumulative effect of several photographs would serve only to incite jurors to passion, prejudice, vengeance, hatred, and disgust, their admission into evidence should be denied. *Archina v. People,* 135 Colo. 8, 307 P.2d 1083 (1957).

Here, all the photographs were probative and in our view, the probative value counterbalanced any inflammatory effect they may have had on the jury. No fundamental error is involved.

## VIII.

■ Finally, the defendant urges that the trial court erred in denying his motion for judgment of acquittal because the evidence produced at trial was insufficient as a matter of law to sustain his conviction of first-degree murder. The test to be applied in ruling on a motion for judgment of acquittal is whether the evidence, either direct or circumstantial, when viewed in the light most favorable to the prosecution would substantially and sufficiently support a conclusion by a reasonable mind that the defendant is guilty beyond a reasonable doubt. *People v. Saghy*, 190 Colo. 79, 543 P.2d 1243 (1975); *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973).

■ The evidence, viewed in a light most favorable to the prosecution, establishes the following facts. The defendant was at the victim's apartment at the approximate time of the homicide. He was arrested while driving the victim's truck in New Mexico, the day following the homicide. He possessed the victim's complete set of keys and credit cards. Defendant's clothing was stained with the victim's type of blood. A search of defendant's motel room produced several items of property owned by the victim. Found on the seat of the victim's truck was a fishing knife taken from the victim's apartment which could have caused the mortal wounds to the victim.

We believe that this evidence, together with the reasonable inferences therefrom was substantial enough to permit a jury to find the defendant guilty beyond a reasonable doubt. The trial court therefore properly denied defendant's motion for judgment of acquittal.

Judgment affirmed.