## No. 80SA25

## The People of the State of Colorado v. Craig Spies

(615 P.2d 710)

Decided August 25, 1980.

---

Dale Tooley, District Attorney, Brooke Wunnicke, Chief Appellate Deputy, Donna Skinner Reed, Deputy, for plaintiff-appellant.

Marks & Olom, Jonathan L. Olom, for defendant-appellee.

*En Banc.*

JUSTICE LOHR delivered the opinion of the Court.

In this interlocutory appeal pursuant to C.A.R. 4.1, the People challenge the trial court's order granting the defendant's motion to suppress physical evidence. We reverse and remand for further proceedings.

On the evening of March 16, 1979, a police officer observed an Oldsmobile automobile in the parking lot of Mile High Stadium. A temporary license was displayed on the rear window of the Oldsmobile, but the vehicle described on the temporary license was a Dodge. Upon inquiry the officer learned that the Denver police department had received a report that the Oldsmobile had been stolen. The police kept the vehicle under surveillance. Later that evening the defendant and a woman entered the Oldsmobile, and both were arrested. An officer then searched the vehicle and found another temporary license plate crumpled up on the floor of the back seat. This temporary license plate had been issued for a vehicle other than the Oldsmobile. The police investigated and learned that both temporary license plates had been stolen.

The defendant was charged with aggravated motor vehicle theft, section 18-4-409, C.R.S. 1973 (1978 Repl. Vol. 8) (1979 Supp.),[1] and theft by receiving, section 18-4-410, C.R.S. 1973 (1978 Repl. Vol. 8). Both charges were based upon theft of the Oldsmobile. The trial court granted the defendant's motion to suppress the crumpled temporary license plate found inside the automobile.[2]

In this appeal the People do not contend that the search of the interior of the automobile was consistent with constitutional provisions prohibiting unreasonable searches. *See U.S. Const.* amends. IV, XIV; *Colo. Const.* art. II, § 7. Instead, the People claim that the defendant lacks standing to question the legality of the search. We shall consider this claim first within the framework of the Fourth Amendment to the Constitution of the United States and then within the framework of *Colo. Const.* art. II, § 7.

## I.

The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *see People v. Pearson,* 190 Colo. 313, 546 P.2d 1259 (1976); *People v. Trusty,* 183 Colo. 291, 516 P.2d 423 (1973). Establishment of such a violation gives an individual "standing" to assert the issue of the legality of the search or seizure. *See Rakas v. Illinois,*

---

[1] Section 18-4-409(2), C.R.S. 1973 (1978 Repl. Vol. 8), provides, in pertinent part:

"(2) A person commits aggravated motor vehicle theft if he knowingly obtains or exercises control over the motor vehicle of another without authorization or by threat or deception and:

"(a) Retains possession or control of the motor vehicle for more than seventy-two hours; . . . ."

[2] The trial court denied the defendant's motion to suppress the temporary license plate which was displayed on the rear window of the Oldsmobile. That ruling is not subject to review by interlocutory appeal. C.A.R. 4.1.

*supra; People v. Pearson, supra.*

The defendant contends that he has automatic standing to assert that the search of the automobile and the seizure of the temporary license were illegal, under the authority of *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). That case held that, where possession of the seized evidence is an essential element of the offense charged, the defendant is not obligated to establish that his own Fourth Amendment rights were violated but only that the search and the seizure were unconstitutional.[3]  In the instant case an element of the crime of aggravated motor vehicle theft with which the defendant is charged is retention of possession or control of the vehicle for more than seventy-two hours. The information charges that the required period of possession occurred some time between August 18, 1978, and March 16, 1979, the date of the challenged search and seizure. Thus, the defendant contends that he is not required to establish that his own Fourth Amendment rights were violated in order to challenge the legality of the search and seizure.[4]

▮ Whether the defendant would have automatic standing to claim violation of his Fourth Amendment rights under the rule of *Jones v. United States, supra,* is a question we need not consider. The automatic standing rule of *Jones* has been overruled recently by the United States Supreme Court in *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). There, the court noted that the underpinnings of *Jones* had been substantially destroyed by later decisions.

The automatic standing rule of *Jones* was created to solve two problems which no longer exist. First, absent such a rule a defendant charged with a possessory offense might be able to establish standing to challenge a search and seizure only by giving self-incriminating testimony which would be admissible at his trial as evidence of guilt. This problem has been eliminated by the decision in *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). *See Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). In *Simmons* it was held that testimony given by a defendant in support of a motion to suppress evidence on Fourth Amendment grounds cannot be admitted in evidence against the defendant at trial on the issue of guilt unless the defendant

---

[3] *Jones v. United States, supra,* has been followed in *Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). *Brown* made it clear that possession *at the time of the* *contested search and seizure* must be an essential element of the offense charged in order to invoke the automatic standing rule.

[4] Although automatic standing cases usually deal with situations in which possession of the item seized is an essential element of the crime charged, the considerations are the same where, as here, possession of the place searched is an essential element of the crime charged. *See Williams v. United States,* 412 F.2d 729 (5th Cir. 1969); *Glisson v. United States,* 406 F.2d 423 (5th Cir. 1969); *Simpson v. United States,* 346 F.2d 291 (10th Cir. 1965).

438

makes no objection.[5]

■ Second, it was considered inappropriate to permit the People to maintain contradictory positions. At the suppression hearing, in order to avoid the conclusion that a defendant had standing, the People would assert that he did not have possession of the property seized. Later, at the trial, the People would assert that the defendant did have such possession, in order to establish an element of the substantive offense. In *United States v. Salvucci, supra,* the court found the concern as to the appropriateness of permitting such contradictory positions to have been resolved in *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). That case established that the essential inquiry to determine a defendant's ability to contest the legality of a search is not whether he had possession of the item seized but whether he had a legitimate expectation of privacy in the invaded place. Possession of the place searched or of the item seized is but one factor bearing on that question; possession is not the sole criterion to determine whether a protected Fourth Amendment interest exists. *Id.* Thus, without being legally contradictory, the People can maintain that a defendant possessed the property in question but that his Fourth Amendment rights were not violated by seizure of the property. *See United States v. Salvucci, supra.*

■ *Salvucci* establishes that the defendant has no automatic right under the Fourth Amendment to assert the illegality of the search and seizure.

## II.

Next, we must consider whether the automatic standing rule should be applied in the instant case to protect those values guaranteed by *Colo. Const.* art. II, § 7.

The first concern expressed in *Jones v. United States, supra* — that the defendant may be able to establish standing only by giving self-incriminating testimony which would be admissible at his trial as evidence of guilt — is greatly diluted in the case at bar.

At the suppression hearing it was the defendant's position that he was in possession of the vehicle, but that the possession was not wrongful. At the defendant's request his affidavit was received in evidence at that

---

[5] *Simmons v. United States, supra,* leaves unanswered the question whether self-incriminating testimony by a defendant at a hearing on a motion to suppress evidence can be used to impeach that defendant if he chooses to testify at his trial on the issue of guilt. In *United States v. Salvucci, supra,* the court stated that this potential detriment to the defendant should be considered in determining the scope of the *Simmons* rule in an appropriate case, rather than being utilized as a reason to retain the rule of automatic standing. In *United States v. Havens,* 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980), a somewhat related question was answered. There, physical evidence obtained in violation of the defendant's Fourth Amendment rights was permitted to be used in the government's rebuttal case to impeach a statement made by the defendant on cross-examination by the prosecutor. *See also Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954).

hearing. The affidavit states that the Oldsmobile was provided to the defendant for his personal use in December 1978; that he used the vehicle at all times under the belief that it was not stolen and that the party providing it for his use was authorized to do so; and that at the time of his arrest the defendant believed that he was in lawful possession of the vehicle based upon the authorization he had been given to use the Oldsmobile. Thus, although the defendant claims automatic standing, he has already placed of record his sworn statement with respect to possession of the Oldsmobile and his state of mind with respect to his right to use the vehicle. These are the matters central to a determination whether the defendant has a constitutionally protected interest which would permit him to object to the unlawful search and seizure. *See Rakas v. Illinois, supra;*[6] *People v. Pearson, supra.* To recognize automatic standing in the defendant at this time would not prevent the use of the affidavit for impeachment at the trial in any manner consistent with the law. *See United States v. Salvucci, supra.*

The second concern expressed in *Jones* — that it is inappropriate to permit the People to maintain contradictory positions at the suppression hearing and at the trial — is not present in this case. The People do not base their claim that the defendant lacks standing to challenge the search upon a contention that the defendant did not have possession of the Oldsmobile. Their position at the suppression hearing was that the defendant's possession was not lawful and thus could not be used as a foundation for standing to challenge the legality of the search. *See People v. Pearson, supra.* Predictably, in order to establish the crime of aggravated motor vehicle theft, the People's position with respect to possession of the Oldsmobile will be the same at the trial.

■ The reasons which gave birth to the automatic standing rule have little or no applicability to the facts of this case. Under these circumstances, it is neither necessary nor appropriate to recognize automatic standing in the defendant to challenge the legality of the search. *See Rakas v. Illinois, supra.*[7]

### III.

■ In *Rakas v. Illinois, supra,* it was held that the questions of standing and reasonableness of the search merge into one: whether the government officials violated any legitimate expectation of privacy held by

---

[6] We need not consider for present purposes whether the ambit of constitutionally protected interest under the *Rakas* standard includes all those interests which would be recognized and protected under *Colo. Const.* art. II, § 7. *Cf. People v. Bannister,* 199 Colo. 281, _____, 607 P.2d 987, 988 n. 1 (1980) (reserving the question whether the standing limitations imposed by *Rakas v. Illinois, supra,* apply to suppression motions based on the provisions of *Colo. Const.* art. II. § 7).

[7] Whether *Colo. Const.* art. II, § 7, requires that automatic standing be recognized in other factual situations, notwithstanding that its demise as a part of Fourth Amendment law has been recognized in *United States v. Salvucci, supra,* is a question we leave for another day.

the defendant. *Accord, Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *see People v. Little,* 198 Colo. 244, 598 P.2d 140 (1979). Such a determination is appropriately based upon the totality of the circumstances in each case. *See Rawlings v. Kentucky, supra.* If the Oldsmobile had been stolen, and the defendant knew that it had been stolen, the defendant could have no expectation of privacy which the law would recognize as legitimate. *See Rakas v. Illinois, supra; People v. Pearson, supra.* On the other hand, if the Oldsmobile had not been stolen or if the defendant reasonably believed that it had not been stolen, and if the defendant reasonably believed that he had a right to use the vehicle, he would have a legitimate expectation of privacy in the vehicle. *See People v. Pearson, supra; see also United States v. Ochs,* 595 F.2d 1247 (2d Cir. 1979); *United States v. Lopez,* 474 F. Supp. 943 (C.D. Cal. 1979).

The trial court did not make the factual findings necessary to determine whether the defendant had a legitimate expectation of privacy in the Oldsmobile at the time of the search. The evidence in the record is conflicting on this point. The defendant's affidavit says that the vehicle had been provided to him for his personal use in December 1978 and that he used the vehicle at all times under the belief that it was not stolen. However, the record also contains evidence that the temporary license plate on the rear window of the Oldsmobile did not correspond to the description of the vehicle; that it had been removed from the vehicle for which it was issued without the owner's consent; and that there was no registration in the vehicle when the search was conducted. This circumstantial evidence casts doubt on the accuracy of the defendant's affidavit. The relevant factual determinations with respect to whether the defendant had a legitimate expectation of privacy in the vehicle should be made by the trial court after a further hearing.[8]
Then that court will be able to determine whether the defendant's constitutional rights were violated, based on the standards discussed in this opinion.

We reverse the ruling of the trial court and remand this case for further proceedings consistent with this opinion.

JUSTICE ERICKSON and JUSTICE QUINN dissent.

JUSTICE QUINN dissenting:
I respectfully dissent.

---

[8] The recent developments in the law which have been discussed in this opinion make it appropriate that a further hearing be held to give the parties an opportunity to present additional evidence relevant to the correct legal standards.

The charges of aggravated motor vehicle theft, section 18-4-409, C.R.S. 1973 (1979 Supp.), and theft by receiving, section 18-4-410, C.R.S. 1973 (1978 Repl. Vol. 8), are clearly possessory in nature, requiring as an essential element the possession of the motor vehicle. The defendant filed a motion to suppress a temporary motor vehicle license plate seized by police officers from inside the vehicle in the course of a warrantless search. Several hours before the search the officers observed the vehicle unoccupied and parked in a parking lot at Mile-Hi Stadium in Denver. They determined that the vehicle was stolen and proceeded to disable it by releasing the hood latch and pulling spark-plug wires from the engine. They closely watched the vehicle for several hours. The defendant, who was attending a hockey game in the vicinity, eventually returned to the vehicle and entered it. He was immediately placed under arrest. The officers then searched the vehicle and seized the challenged evidence from the back-seat area.

In ruling on the defendant's motion to suppress, the trial court concluded initially that the defendant had standing on the basis of the possessory nature of the offenses. The district attorney requested a continuance of the hearing in order to provide additional legal authorities to the court. The court expressed its concern over the issue of standing and accommodated the district attorney. During the course of further legal argument the defendant offered into evidence an affidavit stating that he came into possession of the vehicle in December 1978, three months before the search, and at no time did he know that it was stolen. The affidavit was admitted without objection. After extensive arguments the court again ruled that the defendant had standing. The court granted the motion to suppress on the ground that the officers had disabled the vehicle and had it under their close observation for three hours and, accordingly, a search warrant was constitutionally required under these circumstances. *See e.g., People v. Bannister,* 199 Colo. 281, 607 P.2d 987 (1980). The People contest only the court's ruling on standing.

I dissent from the majority for two reasons: (1) the majority, in adhering to the United States Supreme Court's holding in *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), unduly expands the prosecution's right to use the defendant's suppression testimony for impeachment at trial in the event the defendant exercises his constitutional right to testify in his own defense; and (2) the failure to accord the defendant automatic standing in this case, which involves possessory offenses, undercuts constitutional protections previously existing under Article II, Section 7, of the Colorado Constitution.

I.

The majority properly adheres to the holding of *United States v. Salvucci, supra,* as it must, in rejecting automatic standing as part of Fourth Amendment doctrine. However, the majority states that the

defendant's ability to establish standing at the cost of furnishing self-incriminating evidence by testifying at the suppression hearing has been eliminated by the holding of *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). I disagree.

*Simmons'* holding that the defendant's suppression testimony may not be admitted against the defendant at trial as evidence of guilt does not afford complete protection against the self-incrimination dilemma, because *Simmons* does not expressly address the issue of impeachment-use of such testimony. Even *Salvucci,* in rejecting the automatic standing rule in possessory crimes, recognizes that impeachment-use at trial of an accused's suppression testimony is still an open question that "more aptly relates to the proper breadth of the *Simmons* privilege . . . ." Thus, unless *Simmons* is extended to protect an accused's suppression testimony from impeachment-use at trial, the accused is confronted with the Hobson's choice of waiving his privilege against self-incrimination in order to assert a Fourth Amendment claim. The majority declines to address this issue.

The doctrinal trend evidenced in recent decisions of the United States Supreme Court authorizing the impeachment-use of evidence illegally obtained by law enforcement officers in violation of the accused's constitutional rights is not dispositive of this issue. *See United States v. Havens,* 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980); *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). These cases do not deal with testimonial evidence offered by the defendant in furtherance of a basic constitutional right. *Simmons* accorded such evidence great deference and regarded it "as an integral part of his Fourth Amendment exclusion claim":

"It seems obvious that a defendant who knows that his testimony may be admissible against him at trial will sometimes be deterred from presenting the testimonial proof necessary to assert a Fourth Amendment claim. The likelihood of inhibition is greatest when the testimony is known to be admissible regardless of the outcome of the motion to suppress . . . .

Since search-and-seizure claims depend heavily upon their individual facts, and since the law of search and seizure is in a state of flux, the incidence of such marginal cases cannot be said to be negligible. In such circumstances, a defendant with a substantial claim for the exclusion of evidence may conclude that the admission of the evidence, together with the Government's proof linking it to him, is preferable to risking the admission of his own testimony connecting himself with the seized evidence."

. . .

"In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another. We therefore hold that when a defendant testifies in support of a motion to suppress

evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." 390 U.S. at 392-94, 88 S.Ct. at 975-76, 19 L.Ed.2d at 1258-59.

While I agree with the principle that the defendant's right to assert a Fourth Amendment violation does not include the right to commit perjury, *e.g., Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), the imposition of a sanction in the form of unconditional use of such testimony for impeachment purposes at trial can have no effect other than the discouragement of legitimate assertions of constitutional claims. The interest of the state in deterring perjury and the interest of the defendant in asserting his Fourth Amendment claim can be accommodated by requiring the prosecution, as a condition precedent to trial-use of the defendant's suppression testimony, to establish to the satisfaction of the trial court that: (1) the defendant gave a statement at the suppression hearing that is contrary to a matter about which he testified at trial; (2) the statement is material to the issues of the case; and (3) either the statement at the suppression hearing or the testimony at trial is false. This showing by the prosecution should be made *in camera* before there is any reference to the defendant's prior testimony in front of the jury. The prosecution, in other words, should not be permitted to engage in a far ranging cross-examination before the jury in an effort to import secondary and tertiary issues into the case and thereby create a foundation for impeachment-use of the defendant's suppression testimony. *See Agnello v. United States,* 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925).

Unless such restrictions are imposed on the use at trial of defendant's suppression testimony, his exercise of constitutional rights is skewed on two counts. First, his assertion of a Fourth Amendment claim will require him to risk furnishing evidence to the government for virtually unrestricted impeachment-use against him at trial and to that extent will encumber his constitutional right to testify in his own defense. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972); *Ferguson v. Georgia,* 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961). Second, his election to keep open an unimpaired option to testify in his own defense at trial will incline him to forego a full and effective assertion of Fourth Amendment rights. *Simmons v. United States, supra.* In either instance, it is the prospect of unrestricted governmental use for impeachment purposes of the defendant's suppression testimony that chills the exercise of basic constitutional rights by penalizing the exercise of them. *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968); *Simmons v. United States, supra; Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *see also* C. Whitebread, *Criminal Procedure,* § 15.06(c) at 319-20 (1980).

## II.

The majority scuttles the automatic standing rule in possessory offenses as part of Colorado constitutional doctrine on the ground that the vice of governmental self-contradiction has been resolved by *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The elimination of governmental self-contradiction, however, is but a secondary consequence of the United States Supreme Court's holdings in *Salvucci* and *Rakas.* The primary effect of those holdings is the diminution of privacy and property rights previously available to a person aggrieved by an unlawful search and seizure. The diminution inevitably flows from the rejection of the automatic standing rule for possessory offenses, and the adoption of *Rakas'* legitimate-expectancy-of-privacy test as the criterion for standing in those cases. The majority's holding thus programs the development of state constitutional doctrine under Article II, Section 7, of the Colorado Constitution to the Fourth Amendment jurisprudence of the United States Supreme Court. With this I disagree.

In *Rakas,* the issue was whether an automobile passenger, who did not assert either a proprietary or possessory interest in the automobile or in the property seized therefrom, nevertheless could claim entitlement to Fourth Amendment protection as one "legitimately on the premises" under the automatic standing rule of *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). In denying entitlement to the passenger, *Rakas* extracted from *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), a partial description of the scope of Fourth Amendment protection and converted that extraction into a formula of limitation. *Rakas* read *Katz* to hold that "capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." 439 U.S. at 143, 99 S.Ct. at 430, 58 L.Ed.2d at 401.

Privacy interests always have been central to Fourth Amendment jurisprudence. *See Note, Formalism, Legal Realism, and Constitutionally Protected Privacy Under the Fourth and Fifth Amendments,* 90 Harv. L. Rev. 945 (1977). *Katz,* however, clearly recognized that Fourth Amendment protections are not necessarily coextensive with privacy interest. The teaching of *Katz* is that the Fourth Amendment "protects individual privacy against certain kinds of governmental intrusion, but *its protections go further, and often have nothing to do with privacy at all.*" 389 U.S. at 350, 88 S.Ct. at 510, 19 L.Ed.2d at 581 (emphasis added). This was also the teaching of *Jones,* namely, that the Fourth Amendment was designed as a "protection against official invasion of privacy *and the security of property.*" 362 U.S. at 261, 80 S.Ct. at 731, 4 L.Ed.2d at 702 (emphasis added).

To say, as the Court did in *Rakas,* that in all cases entitlement to Fourth Amendment protection requires a threshold demonstration of a legitimate expectation of privacy is to misunderstand the teaching of *Katz.* The Fourth Amendment consistently has accorded protection to certain property interests — houses, papers and effects — and, in addition, has offered protection against governmental intrusions into privacy interests emanating, not from property, but from personhood. These personal privacy interests exist independently of any property interest and, therefore, well might require a threshold showing of legitimate expectation. In fact, Charles Katz' use of a public telephone booth to transmit words to another represents a prime example of a privacy interest existing independently of traditional categories of Fourth Amendment property interests. *Katz v. United States,* 389 U.S. at 352, 88 S.Ct. at 511-12, 19 L.Ed.2d 582. In many cases, however, the interest of an accused in a house, an automobile, a document or a personal effect has its source in the fact that *it is his or hers* — that is, it originates in the accused's possessory or proprietary interest in the property seized. The automatic standing rule helps to insulate these interests against unjustified governmental intrusions, not against legitimate intrusions.

Although ostensibly attributing diminishing importance to property considerations in its analysis of Fourth Amendment issues, the United States Supreme Court after *Rakas* has utilized, as it must, those very property considerations in making the initial determination whether an accused's expectation of privacy in the property seized was legitimate. *See United States v. Salvucci, supra; Rawlings v. Commonwealth,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633, (1980). This phenomenon of circularity is inevitable because privacy interest, while admittedly of greater depth and breadth than property interest, cannot be severed totally from property considerations without turning the Fourth Amendment topsy-turvy.

Just as the abandonment of the "legitimately on the premises" rule of *Jones* was a declaration of "open season" on automobiles, insofar as passengers are concerned, *Rakas v. Illinois, supra* (White, J., dissenting), so also the abandonment of the automatic standing rule in this case signals an "open season" on other forms of personal property that might be innocently possessed by an unknowing defendant. We now require a defendant charged with a possessory offense to establish a reasonable doubt with respect to his guilt before he even can claim entitlement to the protections of the Fourth Amendment of the United States Constitution and Article II, Section 7, of the Colorado Constitution. The majority formulates the following directions to the trial court upon remand:

"If the Oldsmobile had been stolen, and the defendant knew that it had been stolen, the defendant could have no expectation of privacy which the law would recognize as legitimate. *See Rakas v. Illinois, supra; People*

*v. Pearson, supra.* On the other hand, if the Oldsmobile had not been stolen or if the defendant reasonably believed that it had not been stolen, and if the defendant reasonably believed that he had a right to use the vehicle, he would have a legitimate expectation of privacy in the vehicle."

The logical progression of this approach leads inevitably to a *per se* rule that one may never claim as legitimate an expectation of privacy in any property the possession of which is prohibited, or in property which might be material evidence in a criminal proceeding.

### III.

I believe that Article II, Section 7, of the Colorado Constitution contemplates greater protection for privacy interests than is presently available under Fourth Amendment doctrine. We have recognized on other occasions that the decisions of the United States Supreme Court, while entitled to respectful consideration, are not controlling on the issue of constitutional protections emanating from identical or similar provisions in the Colorado Constitution. *Charnes v. Digiacomo,* 200 Colo. 94, 612 P.2d 1117 (1980); *Denver v. Nielson,* 194 Colo. 407, 572 P.2d 484 (1977); *People v. Hoinville,* 191 Colo. 357, 553 P.2d 777 (1976); *People v. District Court,* 165 Colo. 253, 439 P.2d 741 (1968); *see also,* Brennan, *State Constitutions and the Protection of Individual Rights,* 90 Harv. L. Rev. 489 (1977); Howard, *State Courts and Constitutional Rights in the Day of the Burger Court,* 62 Va. L. Rev. 873 (1976); Note, *The New Federalism: Toward a Principled Interpretation of the State Constitution,* 29 Stan. L. Rev. 297 (1977).

I would adhere to the automatic standing rule and continue it as part of state constitutional doctrine. The rule affords salutary protection to privacy interests by allowing an accused to assert his rights under Article II, Section 7, of the Colorado Constitution without unduly burdening his right to testify in his own defense at trial. The state's interest in deterring perjury can be effected by allowing impeachment-use of the accused's suppression testimony upon a demonstration that the defendant testified falsely on a material fact either at the suppression hearing or at trial.

The automatic standing rule broadens the range of constitutional protection attaching to both the privacy interests of the accused and those of society at large by removing inducements to illegitimate governmental incursions into those interests. Accommodation of the conflicting societal and personal interests in criminal proceedings by limitation of the right of privacy does not produce an incremental benefit to society when that accommodation is itself an erosion of the constitutional principle to be protected. If the rights of the accused end with those designed to preserve the reliability of the trial process and to prevent conviction of the innocent, it is difficult to imagine the purpose of the protection afforded under the Fourth Amendment to the United States Constitution and Article II, Section 7, of the Colorado Constitution. *See* Shrock & Welsh, *Up From*

*Calandra: The Exclusionary Rule as a Constitutional Requirement,* 59 Minn. L. Rev. 251 (1974).

I would affirm the ruling of the trial court.

I am authorized to say that Justice Erickson joins me in this dissent.

JUSTICE ERICKSON dissenting:

I join Justice Quinn in his dissent.

The exclusionary rule was made applicable to the states in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The exclusionary rule was created to serve two purposes: (1) the factual basis is to deter police misconduct; and (2) the normative function is to avoid the evil of the judiciary sanctioning illegal police conduct. Experience has established that the exclusionary rule has not fully met either of its intended purposes. *See* Oaks, *Studying the Exclusionary Rule in Search and Seizure,* 37 U. Chi. L. Rev. 667 (1970).

I strongly favor an alternative to the exclusionary rule to prevent illegal police conduct,[1] and believe that the focus of any trial should be on the guilt or innocence of the accused. The narrowing of Fourth Amendment rights by the sophisticated legal vehicle of standing was as much a creature of the Supreme Court of the United States as the exclusionary rule itself. The Supreme Court of the United States, by limiting an aggrieved person from asserting that police conduct violated rights of privacy, denies Fourth Amendment protections on an overly technical property law concept. *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).

In my view, we should not accept *Salvucci* and *Rawlings* as a sound approach for interpreting the Colorado Constitution. The constitutional rights guaranteed by the Colo. Const., art. II, § 7, should be protected. Until a better means is proposed, I am not willing to see the constitutional rights of Colorado citizens sacrificed under the guise of lack of standing. The purposes for the exclusionary rule are dissipated and ignored by the

---

[1] "The Pound Conference Follow-Up Task Force suggested that the exclusionary rule be at least modified and favored alternative methods as deterrents to illegal police activity. *The Pound Conference Follow-Up Task Force,* 74 F.R.D. 159 (1976). Erickson, *The Pound Conference Recommendations: A Blueprint for the Justice System in the Twenty-First Century,* 76 F.R.D. 277 (1978); Erickson, *New Directions in the Administration of Justice: Responses to The Pound Conference,* 64 A.B.A.J. 48 (Jan. 1978); and Bell, *Responses of the Justice Department,* 48 A.B.A.J. 53 (1978) highlight many of the recommendations made by the Follow-Up Task Force and point to many decisions that question the efficacy and wisdom of excluding reliable evidence. *See Manson v. Brathwaite,* 432 U.S. 98 (1977); *United States v. Janis,* 428 U.S. 433 (1976); *Stone v. Powell,* 428 U.S. 465 (1976). The Task Force has called for increased efforts to develop ways to protect constitutional rights, while at the same time allowing trial courts to focus on their proper subject — the guilt or innocence of the accused. *See* Wilkey, *The Exclusionary Rule: Why Suppress Valid Evidence?* 62 Judicature 214 (1978)." Erickson, *Pronouncements of the United States Supreme Court Relating to the Criminal Law Field 1978-1979,* 5 Nat'l. J. Crim. Defense 1, 7 (Spring 1979).

448

elimination of the automatic standing rights formerly guaranteed by *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

Accordingly, I join Justice Quinn in the dissent.