**PEOPLE of the State of Colorado, Plaintiff-Appellant,**

v.

**Michael J. COBB, Eddie J. Owens, Ronald T. Harrison, Defendants-Appellees.**

**No. 84SA212.**

Supreme Court of Colorado, En Banc.

Nov. 5, 1984.

---

Norman S. Early, Jr., Dist. Atty., O. Otto Moore, Asst. Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Denver, for plaintiff-appellant.

Kevin Chavous, Denver, for defendant-appellee Michael J. Cobb.

Diane Carlton, Denver, for defendant-appellee Eddie J. Owens.

Richard A. Hostetler, Denver, for defendant-appellee Ronald T. Harrison.

LOHR, Justice.

This is an interlocutory appeal from a suppression order entered by the Denver District Court in a case in which Michael J. Cobb, Eddie J. Owens and Ronald T. Harrison are charged with the crimes of second degree burglary[1] and felony theft.[2] On the defendants' motions, the district court suppressed evidence consisting of a woman's purse, certain statements made by defendant Harrison concerning the purse, and evidence derived by police officers from those statements or from a search of the purse's contents. The district attorney appeals this order as it applies to defendants Cobb and Owens, but does not challenge its correctness as it relates to defendant Harrison. Because the district court erroneously permitted Cobb and Owens to assert a violation of Harrison's constitutional rights, we reverse the suppression order and remand this case to the trial court for further proceedings.

## I.

At 12:14 a.m. on January 13, 1984, police officers were summoned to the residence of Alan Tenenbaum in southeast Denver. When Officers Chagolla and Vasquez arrived, Tenenbaum reported that someone had knocked on his door at about midnight. Upon opening the door, he saw a black male in a dark stocking cap. Tenenbaum did not recognize the man. The stranger said he was sorry, that he had the wrong address, and left. Tenenbaum told the officers that the man got into the back seat of a large, dark blue or black, four-door car—possibly a Chrysler—and that there were two other persons already in the car.

The officers spent only a few minutes with Tenenbaum and then drove through the neighborhood. At 12:26 a.m. they stopped a large, four-door, dark blue Mercury automobile at an intersection not far from Tenenbaum's home. There were three black males in the car. The man in the back seat was wearing a dark stocking cap. From the time the officers left the Tenenbaum residence until they stopped the car in which the defendants were riding, they saw no other cars traveling in the racially mixed residential area in which these events transpired.

Defendant Cobb, who was driving, could not produce a driver's license, and Officer Chagolla asked him to get out of the car and return with Chagolla to the police patrol car. It was at this point that Officer Chagolla noticed that on the floor of the front seat, in front of defendant Harrison, there was what appeared to be a woman's brown leather purse.

The officers obtained names and dates of birth from the defendants, and then radioed police headquarters, relaying this information and a description of the vehicle. While waiting for the results of a computer check for outstanding warrants, the officers filled out a "field contact card" for each of the defendants. Officer Chagolla testified that these cards are used by the Denver Police Department as standard procedure to gather information on suspects. Information from the cards is stored in a computer for possible future use in criminal investigations.

While Officer Chagolla was filling out a contact card for defendant Cobb, he asked Cobb about the ownership of the purse. The defendant replied that he wasn't sure, but that he thought it belonged to defendant Harrison's wife or sister. After Cobb's contact card was completed, and about fifteen minutes after the defendants were stopped, the officers received a call from the police department advising them that Harrison was wanted for failure to appear in Arapahoe County Court. Harrison was taken from the car, frisked, handcuffed, and placed under arrest for failure to appear. When asked about the purse that had been in front of him, Harrison said he

---

**1.** § 18–4–203, 8 C.R.S. (1983 Supp.).

**2.** § 18–4–401, 8 C.R.S. (1978).

had found it, and, when the officers offered to try to return it to its rightful owner, he agreed to let them take it.

The officers then opened the purse and found identification indicating that it belonged to a woman living on East Princeton Avenue. A radio report that reached the officers at 12:45 a.m. announced that the woman's home had been burglarized. All three defendants were then arrested for burglary and given *Miranda*[3] warnings.

## II.

At a hearing on motions by each of the defendants to suppress evidence obtained as a result of the stop, the district court held that, in asking defendant Harrison about the purse after he had been arrested for failure to appear and without giving him a *Miranda* advisement, the police officers had violated Harrison's rights. And since the officers' suspicion was aroused only after Cobb and Harrison had made conflicting statements concerning the ownership of the purse, anything obtained as a result of Harrison's statement was fruit of the poisonous tree and could not be used against Harrison or against Cobb and Owens. *See, e.g., Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *People v. Saiz,* 620 P.2d 15 (Colo. 1980). On this basis the district court ordered suppression of the purse and its contents. We conclude that this ruling is erroneous insofar as it applies to defendants Cobb and Owens, because we hold that they cannot vicariously assert Harrison's *Miranda* rights; nor did they assert any privacy interest in the purse that would render the search of its contents unreasonable as to either of them.

## III.

■ After learning from a radio report that there was a warrant outstanding for Harrison's arrest for failure to appear in court, Officers Chagolla and Vasquez arrested and handcuffed Harrison. It was not until after they had done this that they asked Harrison about the woman's purse found in the car. Assuming, without so holding, that the trial court's finding that this was an unlawful interrogation was correct,[4] it does not follow that evidence inadmissible against Harrison on this basis is also inadmissible against the other defendants. In fact, defendants Cobb and Owens have conceded this point on appeal. Fourth and Fifth Amendment rights are personal and cannot be vicariously asserted. *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); *Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *see also People v. Spies,* 200 Colo. 434, 615 P.2d 710 (1980).

■ Defendants Cobb and Owens also concede on appeal that they had no legitimate expectation of privacy in the purse and therefore cannot object to the search of its contents. *Rawlings v. Kentucky,* 448 U.S. 98 (1980); *Rakas v. Illinois,* 439 U.S. 128, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1978); *People v. Spies,* 200 Colo. 434, 615 P.2d 710 (1980). We agree that the trial court erred in implicitly holding to the contrary.

Notwithstanding their concessions, defendants Cobb and Owens argue that the evidence in question cannot be used against them because the initial detention was unlawful. Were the detention found valid, these defendants admit that they could not complain of the seizure and ensuing search of the purse or of any other evidence derived from the questioning of Harrison.

■ In discussing the validity of the detention, the trial court focused on the three-pronged test developed in *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971) (*Stone*). If the three parts of the test are

---

**3.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**4.** In their appeal, the People do not challenge the suppression order as it applies to defendant Harrison. It is therefore unnecessary to address this question.

met, a police officer can detain an individual temporarily, with less than probable cause for arrest, without violating the unreasonable search and seizure protections of the Fourth Amendment. The requirements are:

(1) the officer must have a reasonable suspicion that the individual has committed, or is about to commit, a crime; (2) the purpose of the detention must be reasonable; and (3) the character of the detention must be reasonable when considered in light of the purpose.

*Stone,* 174 Colo. at 509, 485 P.2d at 497. *Accord People v. Tate,* 657 P.2d 955 (Colo. 1983); *People v. Johnson,* 199 Colo. 68, 605 P.2d 46 (1980).

■ The trial court found that the first prong of the test had been met. The officers had reasonable, specific and articulable suspicion that the defendants had engaged in criminal activity or were about to do so. Officer Chagolla, who had seven years of experience as a patrolman in the area where the events occurred, testified that the defendants' actions were consistent with the behavior of persons "casing" a residence for burglary. The court also found that Tenenbaum's description was accurate enough to support the officers' belief that the defendants were indeed the correct suspects. This part of the trial court's ruling is not contested. The court expressed some doubt, however, whether the other two prongs of the test had been satisfied. This uncertainty was not resolved by the court because it based its ruling on the officers' failure to give Harrison a proper *Miranda* advisement. The court noted in passing that, although identification of the defendants may have been a valid reason for the stop, it is not clear whether the length of the stop was reasonable. We agree that this issue needs clarification.

In *Stone* this court held:

[W]hen an officer reasonably suspects that the person has committed a crime or is about to commit a crime and the officer has not identified the person he legally may stop him to question him about his identity. If ascertainment on the part of an officer of a person's address is reasonably material to the duties being performed by that officer, and if there is the reasonable suspicion just mentioned, the officer may detain the individual for the purpose of questioning as to his address.

*Stone,* 174 Colo. at 509, 485 P.2d at 497. An explanation of a suspect's behavior may also be sought incident to a temporary detention in an appropriate case. *People v. Hazelhurst,* 662 P.2d 1081 (Colo.1983).

■ Using this analysis, we believe that the officers' stop of defendants Cobb, Owens and Harrison to obtain identification was reasonable. Furthermore, we believe that it was reasonable to conduct a warrant check while the other identification procedures were in process. *See People v. Wells,* 676 P.2d 698 (Colo.1984). The trial court's concern was with the length of time it took to complete the field contact cards. Although it was not a finding necessary to the court's decision, the court noted in passing that perhaps it should not have taken between five and eight minutes apiece to fill out the cards, as Officer Chagolla had testified. Therefore, the court expressed the view that it was possible that the police officers had inappropriately extended the detention to await the results of the warrant check. This would cast doubt on the validity of the stop under the third prong of the *Stone* test: whether the character of the detention was reasonable in light of the purpose. Although a temporary detention to obtain identification and an explanation of an individual's behavior is valid, a longer detention is permissible only with the individual's permission, or when supported by probable cause. *People v. Hazelhurst,* 662 P.2d 1081 (Colo.1983); *People v. Schreyer,* 640 P.2d 1147 (Colo. 1982).

In *Hazelhurst,* the defendants were detained for twenty to thirty minutes while police officers waited for the chief investigator from the sheriff's office to arrive. Under those circumstances, since the purpose of the detention went beyond identifi-

cation of the suspects, we found that the detention was valid only as to those defendants the officers had probable cause to arrest.

 Thus, in the case at hand, the trial court must determine whether the defendants were detained only for that amount of time necessary to obtain identification and an explanation of their behavior—the purpose of the stop—or whether they were actually detained for an excessive additional time to await the results of the warrant check. In making this determination, the court should take into account the circumstances under which the information was gathered, including the fact that the officers had no assurance that the suspects were not dangerous, and may have been hampered by the precautions taken for their own security.

If the court finds that the length of the stop was reasonable in light of its purpose, the *Stone* test will have been satisfied, establishing that what was involved in this case was a temporary detention, permissible under the Fourth Amendment, and not an illegal seizure. The test relied upon by the defendants, involving a reasonable person's belief as to whether he was free to leave as an indication of whether an arrest has taken place, is inapplicable to a resolution of the constitutional sufficiency of the detention. Once it has been determined, using the standards outlined in *Stone*, that a stop was a reasonable detention under the Fourth Amendment, further inquiry is unnecessary. *See People v. Lewis*, 659 P.2d 676 (Colo.1983).

Finally, Cobb argues that he was in custody when the officers questioned him about the ownership of the purse. Since he was given no *Miranda* warnings before this questioning, Cobb contends that his Fifth Amendment rights were violated. This contention was not raised in Cobb's motion to suppress the evidence, nor was it argued before the trial court. As a result, the record contains neither findings relating to this issue nor a trial court ruling on the need for a *Miranda* advisement. *See*

*generally, e.g., Berkemer v. McCarty,* —— U.S. ——, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *People v. Thiret,* 685 P.2d 193 (Colo.1984); *People v. Johnson,* 671 P.2d 958 (Colo.1983). Therefore, the issue is not properly before this court, and should, instead, be addressed by the trial court on remand.

We reverse the suppression order and remand the case for further proceedings consistent with this opinion.