Barbara **MOCZYGEMBA,**
**Plaintiff–Appellant,**

v.

**COLORADO DEPARTMENT OF HEALTH CARE POLICY AND FINANCING, Defendant–Appellee.**

**No. 01CA1295.**

Colorado Court of Appeals,
Div. I.

May 23, 2002.

Colorado Legal Services, Ellen G. Alires–Trujillo, Peter Komlos–Hrobsky, Denver, Colorado, for Plaintiff–Appellant.

Ken Salazar, Attorney General, Laurie A. Schoder, Assistant Attorney General, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge ROTHENBERG.

Plaintiff, Barbara Moczygemba (applicant), appeals the order of the district court affirming the final decision of the Colorado Department of Health Care Policy and Financing (the department), which denied her application for home care services under a Medicaid program. We reverse and remand.

## I. Medicaid Program

The state administers a federally funded Medicaid program known as the Home- and Community-based Services for the Elderly, Blind, and Disabled (HCBS). *See* 42 U.S.C. § 1396n(c)(1) (2000); § 26–4–601, et seq., C.R.S.2001; *Weaver v. Colorado Department of Social Services*, 791 P.2d 1230 (Colo.App.1990)(interpreting former version of the statute that contained similar language). HCBS provides home care services, such as dressing, bathing, cooking, and cleaning, to persons who otherwise would require institutionalization. *See* §§ 26–4–602, 26–4–607, C.R.S.2001; *Morgan v. Colorado Department of Health Care Policy & Financing*, —— P.3d ——, 2002 WL 392287 (Colo. App. No. 01CA0629, Mar. 14, 2002)(*Morgan*).

The basic eligibility requirements of HCBS are set forth in § 26–4–606(1)(b), C.R.S.2001, which provides, in relevant part: "Home- and community-based services ... shall be offered only to persons: ... [w]ho are in need of the level of care available in a nursing home...." *See also Morgan, supra,* —— P.3d at —— ("[A]n applicant must have a functional impairment sufficiently severe to require the level of care available in a nursing home.").

The department's regulations further provide: "In order for a patient's functional needs assessment to indicate medical necessity for the skilled and maintenance services available in a nursing facility, the patient must demonstrate that the frequency of need for these services exists at least on a five day a week basis." Department of Health Care Policy & Financing Reg. No. 8.401.12, 10 Code Colo. Regs. 2505–10 (DHCP & F Reg.).

To qualify for HCBS, an applicant must currently require the quality of care available in a nursing home. *See* § 26–4–606(1)(b); *Morgan, supra.* A future need for nursing home care should be considered only if the department is contemplating the removal of a person from HCBS who has already been accepted into it. DHCP & F Reg. No. 8.401.17(D) (service dependency regulation).

When an applicant applies to HCBS, a case manager for the Colorado Foundation for Medical Care evaluates the applicant's physical and mental condition to determine the functional impairment. A reviewing nurse then considers the case manager's evaluation and assigns a score to the applicant using a point system. An applicant who receives twenty or more points and also satisfies other most-important-needs (MINS) criteria automatically qualifies for admission to HCBS. DHCP & F Reg. No. 8.401.17(A); *Morgan, supra.*

If an applicant does not automatically qualify, a second reviewer reassesses the application to determine whether the applicant requires nursing home care. DHCP & F Reg. No. 8.401.17(B), (E); *see Morgan, supra.* If an applicant is denied admission to HCBS, the nurse reviewer may conduct an on-site evaluation of the applicant. DHCP & F Reg. No. 8.401.17(G).

If an applicant is determined to be ineligible for HCBS, he or she may request a hearing by an administrative law judge (ALJ), DHCP & F Reg. No. 8.486.4, whose decision is then reviewed by the department. Section 24–4–105(14)(b)(I), C.R.S.2001. Upon a timely request, the department's decision is subject to judicial review. Section 24–4–106, C.R.S.2001.

## II. Facts

Applicant applied to HCBS in December 1999. She is forty-nine years old and suffers from a number of physical and emotional ailments including gastritis, duodenitis, myalgia, myositis, obesity, hypertension, and depression.

On her first assessment, she scored insufficient points and did not meet the MINS criteria. This score precluded her automatic acceptance into HCBS and she was then reassessed by a physician pursuant to DHCP & F Reg. No. 8.401.17(B). After a record review, the physician determined she did not qualify for HCBS.

Later, a nurse conducted an assessment of applicant during an on-site visit pursuant to DHCP & F Reg. No. 8.401.17(G), and applicant again received a score below the admission requirement.

Thereafter, a reconsideration panel consisting of two doctors reviewed applicant's file along with documentation submitted by her physician and mental health counselor. The reconsideration panel concluded she was ineligible for HCBS because, despite her serious health problems, she did not require nursing home level care.

Applicant appealed that determination to an ALJ. After conducting a hearing, the ALJ reversed the decision of the reconsideration panel. The hearing concerned two issues: (1) whether the reconsideration panel's decision denying applicant's admission into HCBS was proper; and (2) whether applicant "[i]s ... in need of [HCBS] services ... in order that she not be at risk for nursing facility placement."

The ALJ made extensive findings of fact regarding applicant's condition, including that: (1) she has severe mobility problems that the reviewers had minimized, and she appeared at the hearing in a motorized scooter; (2) she was suffering from major depression and cried frequently during the hearing; (3) the depression was "due to her loss of dignity as a human being because she has no one to assist her in mobility, keeping clean, [and] maintaining a clean and livable house"; (4) she has chronic fecal incontinence, and "it sometimes takes [her] 15–20 minutes to get up from the floor after having had a bowel 'accident' "; (5) she had seven episodes of bladder incontinence the week of the hearing; (6) several of the previous reviewers had not seen or examined applicant, and if they had properly considered her bowel and bladder problems, instead of minimizing them, she probably would have received "at least 20 points" which would have automatically qualified her for admission to HCBS under the regulations; (7) she had fallen at least once; and (8) her physical conditions had worsened.

The ALJ further found that "[applicant] is at imminent risk for nursing facility placement [and that] *[a]t present,* her basic human needs in the area of personal hygiene and daily living are not being adequately met to a point where [she] can pursue life with a modicum of human dignity" (emphasis added).

Based on these findings, the ALJ entered the following conclusions of law:

Based on the totality of the evidence at the ALJ hearing, [the department] has failed to prove, by a preponderance of the evidence, that [applicant] does not require [HCBS] services ... *in order to prevent the imminent risk of [applicant's] nursing facility placement.* ... The ALJ concludes that without [HCBS] services ... [applicant] would be certified as eligible for *placement in a nursing facility, on an imminent basis, because she is at risk.* Therefore, she qualifies for [HCBS] services ....* (emphasis added)

On review, the department reversed the ALJ's decision, concluding the ALJ had applied an erroneous standard in assessing applicant's eligibility for HCBS and had misinterpreted the regulations. The regulations require that, in order to be admitted to HCBS, an applicant must have a current need for nursing home care. According to the department, "the ALJ's conclusions of law incorrectly apply an imminent risk-of-deterioration standard," which is the standard under the service dependency regulation, DHCP & F Reg. No. 8.401.17(D).

The district court affirmed the department's decision.

### III. Applicant's Contention

Applicant contends the district court erred in affirming the department's final decision. She maintains that the ALJ applied the correct legal standard in determining her eligibility for HCBS and that the ALJ's order should have been upheld by the department on review. We agree.

If a reviewing court finds an agency decision to be contrary to law or unsupported by substantial evidence in the record, it shall set aside the decision. Section 24–4–106(7), (11), C.R.S.2001.

 We must give deference to and accept the department's interpretation of its own regulations provided that it has a reasonable basis in law and is warranted by the record. *Morgan, supra.*

The department's authority to review and to set aside an ALJ's findings also turns on

whether they concern evidentiary or ultimate facts.

■ Evidentiary facts are the detailed factual or historical findings upon which a legal determination rests. An ALJ's finding of evidentiary fact cannot be set aside by the department on review unless the finding is contrary to the weight of the evidence in the record. *State Board of Medical Examiners v. McCroskey*, 880 P.2d 1188 (Colo.1994); *see also* § 24–4–105(15)(b), C.R.S.2001.

■ Ultimate facts involve a conclusion of law, or at least a mixed question of law and fact, and settle the rights and liabilities of the parties. Ultimate facts usually are phrased in the language of the controlling statute or legal standard. The department may substitute its judgment for that of an ALJ with respect to an ultimate fact so long as the department's finding has a reasonable basis in law and is supported by substantial evidence in the record. *State Board of Medical Examiners v. McCroskey, supra; see also* § 24–4–105(15)(b).

Here, the ALJ specifically found that applicant's *current* needs were not being met and made detailed factual findings in support of that current needs assessment. The department does not challenge the factual findings. It instead focuses on the ALJ's choice of language in finding applicant eligible for HCBS, namely, that there was an "imminent risk for nursing facility placement." The ALJ also referred to applicant's "placement in a nursing facility, on an imminent basis, because she is at risk," and the fact that she is "at risk for nursing facility placement."

Relying on that language, the department argues that the ALJ based his determination on speculation about applicant's future risk of deterioration and that he applied the service dependency regulation. We disagree.

The resolution of this case does not turn on the department's interpretation of unique language in its own regulations. The "imminent risk" terminology used by the ALJ here has been used hundreds of times in prior appellate opinions resolving both civil and criminal cases.

"Risk" is a noun and is defined as "the chance of injury, damage, or loss; danger or hazard." *Black's Law Dictionary* 1328 (7th ed.1999).

■ "Imminent" means "likely to happen without delay; impending; threatening." *Webster's New World Dictionary* 702 (1972); *see also People v. Yaklich*, 833 P.2d 758, 760 (Colo.App.1991)(defining "imminent" as "near at hand, impending or on the point of happening"). "Impending" means "about to happen." *Webster's New World Dictionary* 704.

In at least one case, the Colorado Supreme Court has equated "imminent danger" with "imminent risk," *People v. Mendoza–Balderama*, 981 P.2d 150, 157 (Colo.1999), and "imminent danger" has been defined as "an immediate, real threat to one's safety that justifies the use of force in self-defense." *Black's Law Dictionary* 399.

"Imminent" thus connotes a threat that is immediate. For example, Colorado's self-defense statute permits an individual to use deadly physical force against another if that individual reasonably believes that the other individual has used or *imminently will use* unlawful life-threatening force. Section 18–1–704, C.R.S.2001; *see People v. Yaklich, supra*.

■ In this case, the ALJ used the term "imminent risk" in finding that applicant had no option except placement in a nursing home facility and in determining that she was eligible for HCBS. The ALJ's decision, reasonably construed, was based upon applicant's present and immediate need and condition. The ALJ specifically stated that "[a]t present, her basic human needs in the area of personal hygiene and daily living are not being adequately met."

Thus, contrary to the department's contention, the ALJ applied the correct legal standard and did not base his determination on speculation or on applicant's future risk of deterioration. Nor did he apply the service dependency regulation, which uses the language "future deterioration." Indeed, the ALJ's order made no reference to that regulation.

We therefore conclude the department's decision reversing the ALJ has no reasonable

basis in fact or law, and the district court erred in upholding that decision. *See State Board of Medical Examiners v. McCroskey, supra; see also* § 24–4–105(15)(b) (ALJ's finding of evidentiary fact cannot be set aside by the department on review unless the finding is contrary to the weight of the evidence in the record).

The order of the district court is reversed, and the case is remanded to the district court to reinstate the order of the ALJ.

Judge METZGER and Judge KAPELKE concur.