22CA1588 Peo v Maniz 01-23-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA1588
Morgan County District Court No. 21CR157
Honorable Charles M. Hobbs, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Noe Maniz,

Defendant-Appellant.

---

JUDGMENT AFFIRMED IN PART AND VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE LUM
Freyre and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 23, 2025

---

Philip J. Weiser, Attorney General, Austin R. Johnston, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Rachel Z. Geiman, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Noe Maniz, appeals the judgment of conviction entered on a jury verdict finding him guilty of two counts of violation of bail bond conditions and one count of violation of a protection order.  We affirm in part and vacate in part, and remand with directions.

## I.     Background

¶ 2     In 2020, Maniz was accused of felony offenses in Morgan County Case No. 20CR76 and Logan County Case No. 20CR266.  A surety posted bonds for him in both cases.

¶ 3     For Case No. 20CR266, the bond paperwork indicated that Maniz was required to comply with an accompanying protection order as a condition of his bond.  In turn, the protection order stated that he could "not possess or consume alcoholic beverages."  The protection order didn't list a protected party.

¶ 4     For Case No. 20CR76, the bond paperwork listed "No Alcohol" as a condition of Maniz's bond.  A protection order entered in that case listed A.B. as the protected party and contained the same prohibition against possession and consumption of alcohol.

¶ 5    In 2021, Officer Paul Mendoza and other officers were called to arrest Maniz on multiple outstanding warrants.[1]  At that time, Maniz was at the home of Cathy Schrum.  Schrum met the officers outside and consented to their entry into her house.  Once inside, Officer Mendoza located Maniz on a couch in the living room. Maniz had two cans of beer, one of which was open and "in between his legs."  Maniz cooperated with the arrest, and the case proceeded to trial on charges of violating bond conditions in Case Nos. 20CR266 and 20CR76 and violating the protection order in Case No. 20CR266.  (The prosecution did not try Maniz for violating the protection order in Case No. 20CR76).  A jury found Maniz guilty on all three counts.

¶ 6    Maniz appeals, asserting that insufficient evidence supports his conviction for violation of a protection order.  He also contends that the trial court erred by (1) admitting hearsay evidence; (2) providing a jury instruction on judicial notice that misstated the law; (3) taking judicial notice of two minute orders; (4) permitting the prosecution to call a rebuttal witness based on cross-

---

[1] It's unclear from the record whether the warrants were related to Case Nos. 20CR76 or 20CR266.

2

examination testimony; and (5) allowing the prosecutor to commit misconduct. Maniz further contends that cumulative error requires reversal.

¶ 7     We agree that the evidence supporting the violation of a protection order conviction was insufficient and therefore vacate that conviction. However, we reject Maniz's other contentions.

## II.     Sufficiency of the Evidence

¶ 8     Maniz contends that the evidence was insufficient to convict him of violating a protection order. We agree.

### A.     Additional Facts

¶ 9     The protection order Maniz was charged with violating is a mandatory protection order entered pursuant to section 18-1-1001, C.R.S. 2024, in Case No. 20CR266. The order is on a standardized form that contains boxes for identifying the defendant and the "protected party." The order identifies Maniz as the defendant, but the boxes for "full name of protected party" and the protected party's sex, race, and date of birth are all blank. It also contains checked boxes ordering, as relevant here, that Maniz "shall not harass, molest, intimidate, retaliate against, or tamper with any witness to or victim of the acts [he] is charged with committing" and

3

"shall not possess or consume alcoholic beverages." Finally, the order says that "compliance with this order is a condition of bond." The "no alcoholic beverages" condition is the only protection order condition that Maniz was accused of violating.

¶ 10 At trial, the jury heard testimony that the initial charges in Case No. 20CR266 were vehicular eluding, reckless endangerment, violation of a protection order, violation of bail bonds, second degree criminal trespass, obstructing an officer, driving under the influence, and possession of a weapon. It did not hear any other information about the facts underlying those charges. The court instructed the jury that it could only consider the charges for the limited purpose of determining "whether or not Mr. Maniz violated a provision of the protection order that was designed to protect a protected person from imminent danger to life or health."

## B. Standard of Review

¶ 11 We review a challenge to the sufficiency of the evidence de novo, "even if consideration of the issue involves a preliminary question of statutory construction." *McCoy v. People*, 2019 CO 44, ¶ 34.

4

¶ 12    "In construing a statute, we seek to effectuate the legislature's intent." *Johnson v. People*, 2023 CO 7, ¶ 15.  "[W]e first consider the statute's language, assigning its words and phrases their plain and ordinary meanings." *McBride v. People*, 2022 CO 30, ¶ 23.  "We read these words and phrases in context, and we construe them according to the rules of grammar and common usage." *Id.*  As well, "we read the scheme as a whole, giving consistent, harmonious, and sensible effect to all of its parts, and we avoid constructions that would render any words or phrases superfluous or lead to illogical or absurd results." *Id.*

¶ 13    In assessing the sufficiency of the evidence, we review "whether the evidence before the jury was sufficient both in quantity and quality to sustain the defendant's conviction." *Johnson*, ¶ 13 (citation omitted).  Our review considers whether the evidence, "when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Id.* (citation omitted).

¶ 14    "[W]e give the prosecution the benefit of every reasonable inference that may fairly be drawn from the evidence . . . ."

*McBride*, ¶ 38. However, those inferences "must be supported by a 'logical and convincing connection between the facts established and the conclusion inferred.'" *Id.* (citation omitted). "A verdict cannot rest on guessing, speculation, conjecture, or a mere modicum of relevant evidence." *Id.*

### C. Applicable Law

¶ 15 Section 18-1-1001(1) requires a court to enter a protection order in all criminal cases that restrains the defendant from "harassing, molesting, intimidating, retaliating against, or tampering with any witness to or victim of the acts charged."

¶ 16 Section 18-6-803.5(1)(a), C.R.S. 2024, provides that a person commits the crime of violation of a protection order when, as relevant here, the person "violates any . . . provision of the protection order to protect the protected person from imminent danger to life or health, and such conduct is prohibited by the protection order." Under that section, a "protected person" is defined as "the person or persons identified in the protection order as the person or persons for whose benefit the protection order was issued." § 18-6-803.5(1.5)(a).

## D. Analysis

¶ 17    Maniz contends that he cannot, as a matter of law, be guilty of violating a "provision of the protection order [designed] *to protect the protected person* from imminent danger to life or health," § 18-6-803.5(1)(a) (emphasis added), because the protection order didn't identify a "protected person" as defined in section 18-6-803.5(1.5)(a).

¶ 18    The People respond that section 18-6-803.5 does not necessarily require a "protected person" to be identified by name. Instead, they contend that the witnesses to and victims of Maniz's underlying offenses are automatically "protected person[s]" regardless of whether the protection order lists their names or other identifying information.[2]

---

[2] This rationale differs somewhat from that offered at trial. There, the prosecution argued that "the community" (rather than the witnesses and victims) was the protected party. Nevertheless, we consider the People's "witnesses and victims" argument because we may affirm the judgment on any ground supported by the record. *People v. Eppens*, 979 P.2d 14, 22 (Colo. 1999). We do not address the "community" argument because it was not raised on appeal. *See Moody v. People*, 159 P.3d 611, 614 (Colo. 2007) ("[A]rguments not advanced on appeal are generally deemed waived.").

7

¶ 19    However, we need not resolve this dispute.  Assuming, without deciding, that "protected person[s]" under section 18-6-803.5 includes the witnesses to and victims of Maniz's actions underlying Case No. 20CR266, there is insufficient evidence from which a jury could conclude that the "no alcoholic beverages" provision was designed to protect those particular individuals from *imminent* danger to life or health.

¶ 20    "Imminent" means "threatening to occur immediately" or "[a]bout to take place."  Black's Law Dictionary 824 (12th ed. 2024); *see also People v. Hasadinratana*, 2021 COA 66, ¶ 26 (holding that, in the context of choice of evils defense, "'[i]mminent' means 'likely to happen without delay; impending; threatening'" (quoting *Moczygemba v. Colo. Dep't of Health Care Pol'y & Fin.*, 51 P.3d 1083, 1087 (Colo. App. 2002))).  From the charges underlying the protection order, the jury could infer that Maniz engaged in behavior that was dangerous to the public after consuming alcohol, including driving under the influence.  Therefore, the jury could also infer that the "no alcoholic beverages" condition was designed to protect the community at large from imminent danger because if Maniz consumed alcohol, there was an immediate threat that his

8

subsequent actions would endanger the health or life of any community member he happened to encounter.

¶ 21 However, section 18-6-803.5 does not merely require that the defendant violate a condition designed to protect the community in general. Rather, the jury must conclude that the defendant violated a condition designed to protect the "protected person" in particular. § 18-6-803.5(1)(a). The jury received no information about the witnesses to or victims of Maniz's actions underlying the protection order, including where they lived or how often Maniz might encounter them. Thus, while the jury could reasonably infer that Maniz's alcohol consumption presented an immediate threat that he might harm *someone*, there was no evidence from which a jury could infer (without speculating) that the "no alcoholic beverages" condition was designed to protect against an immediate threat that his alcohol consumption would endanger the *particular individuals* who witnessed or were victimized by the underlying crimes.

¶ 22 For these reasons, we vacate Maniz's conviction for violation of a protection order.

9

### III. Hearsay Concerning Bond Conditions

¶ 23    Maniz contends that the trial court abused its discretion by admitting Officer Mendoza's testimony that Maniz's bond condition in Case No. 20CR266 was in place at the time of his arrest. Maniz asserts that the testimony was hearsay based on out-of-court statements made by police dispatch and contained on detention paperwork.[3] He further contends that this error substantially impacted the outcome of the case because Officer Mendoza's testimony was the only evidence proving that the Case No. 20CR266 bond condition remained in effect when Maniz was caught with beer. We are not persuaded.

### A. Legal Principles and Standard of Review

¶ 24    Hearsay is an out-of-court statement offered in evidence at trial to prove the truth of the matter asserted. CRE 801(c); *see People v. McFee*, 2016 COA 97, ¶ 10. Hearsay statements are

---

[3] Officer Mendoza relied on these same sources when testifying that the protection order in Case No. 20CR266 remained active at the time of Maniz's arrest. Because we vacate the violation of a protection order conviction for insufficient evidence, our analysis focuses only on the bond conditions.

generally deemed inadmissible unless they fall within a recognized exception. CRE 802; *see McFee*, ¶ 10.

¶ 25 We review a trial court's evidentiary rulings for an abuse of discretion. *Russell v. People*, 2017 CO 3, ¶ 5. A trial court abuses its discretion when it misapplies the law or when its ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Baker*, 2021 CO 29, ¶ 29.

¶ 26 We review evidentiary errors for harmlessness. *Russell*, ¶ 6. Reversal is not required "when there is no reasonable probability that the error contributed to the defendant's conviction," *id.*, meaning that the error did not "substantially influence[] the verdict or affect[] the fairness of the trial proceedings," *People v. Hamilton*, 2019 COA 101, ¶ 13 (quoting *Tevlin v. People*, 715 P.2d 338, 342 (Colo. 1986)).

### B. Additional Facts

¶ 27 To prove that Maniz violated the no-alcohol condition of his bail bond in Case No. 20CR266, the prosecution needed to prove "beyond a reasonable doubt that the terms of the bond were in effect at the time" Maniz was discovered in possession of the beer. *People v. Luna*, 2013 COA 67, ¶ 17.

11

¶ 28    At trial, Officer Mendoza testified about the status of the bond conditions:

> Q. (By [the prosecution]) Officer, were these conditions of bond . . . in place when you came into contact with [Maniz] . . . ?
>
> A. Yes, they were.
>
> Q. How do you know?
>
> A. We verified with — through our dispatch.
>
> [The defense]: Objection.  Hearsay.
>
> THE COURT: Overruled.
>
> A. And we received the paperwork once we were at the Morgan County Detention Center.
>
> Q. (By [the prosecution]) So the cases had not yet been — there hadn't been a resolution to them yet?
>
> A. No, not at that time.

### C.    Analysis

¶ 29    The first question, asking whether the bond conditions were still in place, and Officer Mendoza's answer, "Yes, they were," were not hearsay because that exchange did not contain or reference any out-of-court statement.  *See* CRE 801(c).

¶ 30    Officer Mendoza's second and third answers — that he knew the bond conditions were still in place because he "verified with

12

dispatch" and "received the paperwork" — are arguably hearsay because they refer to out-of-court statements made by third parties at dispatch or on the paperwork. But even if we assume that the trial court erred by overruling Maniz's hearsay objection to those responses,[4] such an error does not convert the initial exchange into hearsay. At most, the responses suggest that Officer Mendoza lacked personal knowledge about whether the bond conditions were in place when he found Maniz with the beer. *See* CRE 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter."). But Maniz did not object on that basis at trial, and he doesn't raise a personal knowledge error on appeal. *See Moody v. People*, 159 P.3d 611, 614 (Colo. 2007) ("[A]rguments not advanced on appeal are generally deemed waived.").

¶ 31 Any hearsay error is therefore harmless. Even if the trial court had sustained Maniz's hearsay objection and prohibited Officer Mendoza from testifying about how he knew that the bond

---

[4] Arguably, the only alleged error Maniz preserved was his objection as to the testimony that Officer Mendoza "verified with dispatch." But because it doesn't matter for purposes of this analysis, we treat both purported errors as if they were preserved.

conditions were in place (and even if it also prohibited Officer Mendoza's subsequent testimony about whether Maniz's prior cases had been resolved), the jury still would have heard Officer Mendoza's initial testimony that the bond conditions were in effect when he came to arrest Maniz. We cannot conclude that information about the source of Officer Mendoza's knowledge substantially affected the outcome of the case. *See Hamilton*, ¶ 13. And evidence that Maniz's prior cases hadn't been resolved — and thus, that the bond conditions were still in place — is cumulative of Officer Mendoza's initial testimony. *See McFee*, ¶ 90 ("When evidence is merely cumulative, any error in its admission is harmless.").

IV.  Jury Instruction on Judicial Notice

¶ 32    Maniz contends that the trial court plainly erred when it instructed the jury that "[a] judicially noticed fact is one which the court determines is not subject to reasonable dispute." *See Doyle v. People*, 2015 CO 10, ¶¶ 5, 15. However, Maniz tendered a proposed jury instruction containing this exact language. Review is therefore precluded under invited error. *See People v. Gross*, 2012 CO 60M,

¶ 2 ("[T]he invited error doctrine precludes plain error review of a defense-tendered instruction.").

## V.  Judicial Notice of Minute Orders

¶ 33    Maniz next asserts that the trial court erred by taking judicial notice of minute orders that stated Maniz was present at hearings where his bond conditions were set.  We disagree.

### A.  Legal Principles and Standards of Review

¶ 34    "[A] [trial] court has discretion to take judicial notice of an adjudicative fact."  *People v. Sena*, 2016 COA 161, ¶ 23.  "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  CRE 201(b).

¶ 35    The occurrence of legal proceedings or other court actions are proper facts for judicial notice under CRE 201.  *Sena*, ¶ 23; *see Doyle*, ¶ 11 (recognizing that judicial notice of court records can include transcripts, convictions, and court orders).  But taking judicial notice of "acts or conditions that were the subject of prior litigation, including court findings and conclusions, for no greater

reason than their reflection in court records," is not proper. *Doyle*, ¶ 11.

## B. Applicable Facts

¶ 36    The trial court took judicial notice of minute orders from Case Nos. 20CR76 and 20CR266, which were offered by the prosecution as evidence that Maniz was aware of his bond conditions.

¶ 37    The minute order from Case No. 20CR76 stated that Maniz had appeared in custody via video at a hearing where bond was set with standard conditions. The minute order from Case No. 20CR266 stated that Maniz appeared in person for an advisement hearing, bond was set, the bond conditions were to comply with the protection order, and the conditions included no consumption or possession of alcohol.

## C. Analysis

¶ 38    To the extent Maniz argues that the trial court erred by taking judicial notice of the minute orders themselves, we disagree. It is well established that "[a] court may take judicial notice of the contents of court records in a related proceeding." *People v. Sa'ra*, 117 P.3d 51, 56 (Colo. App. 2004). And a court order is part of the contents of a court record.

16

¶ 39    Nonetheless, Maniz also argues that the trial court abused its

discretion by taking judicial notice of the *contents* of the minute

orders.  As we understand him, he contends that the court took

judicial notice of the minute orders' underlying "findings of fact"

that he was present in the courtroom (or via video) when the bond

conditions were read.  In support, he refers to a pretrial hearing

where the trial court stated that it could take "judicial notice of

those [bond hearing] events and the minute orders of those

proceedings."

¶ 40    But whatever the court may have said at the pretrial hearing,

at trial, it took judicial notice of the minute order in Case No.

20CR76 as "a document out of its own files."  In doing so, the court

instructed the jury that "a judicially noticed document carries no

additional or exceptional weight over any other evidence."  Later,

the court also took judicial notice "of the minute order" in Case No.

20CR266.  At no time during trial did the court indicate that it took

judicial notice of any of the underlying adjudicative facts contained

in either minute order.  *Cf. Doyle*, ¶ 13 (distinguishing between

judicial notice of "the fact that the defendant did not appear at the

[prior] proceeding" and judicial notice of the court's "own prior

finding [that the defendant failed to appear] and the effect of that finding, as reflected in court records").

¶ 41     For these reasons, we perceive no error.

## VI.   Rebuttal Evidence

¶ 42     Maniz contends that the trial court erred by permitting the prosecution to call a rebuttal witness after the defense rested without presenting any evidence in its case-in-chief.  We disagree.

### A.     Additional Facts

¶ 43     Before trial, Maniz filed a motion to exclude Schrum as a witness because the prosecution failed to timely endorse her.  As a sanction for the late endorsement, the trial court ordered that the prosecution could not call Schrum to testify except as a rebuttal witness.

¶ 44     During opening statements, defense counsel argued that Maniz did not possess the beer that officers found near him:

> You're going to learn that the police assumed
> Mr. Maniz possessed alcohol because there
> were two beer cans on the floor in Cathy
> Schrum's living room.  You will see that the
> police did not take even the simplest of steps
> to verify who those beers belonged to or how
> they got into the home.

18

¶ 45    On direct examination, Officer Mendoza testified that he knew Maniz was drinking beer at the time of the arrest because he found Maniz with an open beer can between his legs and smelling of alcohol.  On cross-examination, defense counsel challenged Officer Mendoza on whether he actually saw Maniz drinking beer or holding a beer can.  She also elicited testimony that the house belonged to Schrum and that Schrum "came in with [the police]" when Maniz was found with the beer.  Officer Mendoza also testified on cross-examination that he "had no reason to believe that [Schrum] wasn't allowed to drink alcohol" and that he didn't ask Schrum if she had been drinking or if the beer cans were hers.

¶ 46    After the defense rested without calling any witnesses, the prosecution asked to call Schrum as a rebuttal witness to address the testimony elicited during Officer Mendoza's cross-examination. Maniz objected, but the trial court permitted the prosecution to call Schrum for the purposes of rebutting "whether or not the alcohol or beer could be hers or she possessed it."

¶ 47    Schrum then testified that she didn't drink or keep liquor or beer in her home because she was an alcoholic.

## B. Legal Principles and Standard of Review

¶ 48    Rebuttal evidence is evidence that "tends to contradict the adverse party's case, whether it be challenging the testimony of a specific witness or refuting the adverse party's entire theory or claim." *People v. Welsh*, 80 P.3d 296, 304 (Colo. 2003).

¶ 49    "In order to present rebuttal evidence, the offering party necessarily must demonstrate that the evidence is relevant to rebut a specific claim, theory, witness or other evidence of the adverse party." *Id.* The rebuttal evidence may take a variety of forms, including "any competent evidence which explains, refutes, counteracts, or disproves the evidence put on by the other party, even if the rebuttal evidence also tends to support the party's case-in-chief." *Id.* (quoting *People v. Rowerdink*, 756 P.2d 986, 994 (Colo. 1988)).

¶ 50    We review a trial court's admission of evidence for abuse of discretion. *Id.* And we only reverse an erroneous ruling if the admission of the evidence "substantially influenced the verdict or affected the fairness of the trial." *Id.* at 310.

## C. Analysis

¶ 51 Maniz does not cite, and we have not found, any law that prohibits the calling of a rebuttal witness simply because the defense did not present any evidence in its case-in-chief. Rather, rebuttal evidence may be presented to rebut "a specific claim, *theory*, . . . or *other evidence* of the adverse party." *Welsh*, 80 P.3d at 304 (emphasis added). Here, defense counsel presented the theory that the beer did not belong to Maniz and elicited testimony tending to show that the beer might have belonged to Schrum. Accordingly, the trial court acted within its significant discretion to allow Schrum's limited testimony that she did not keep any alcohol at her home. *See Warden v. Exempla, Inc.*, 2012 CO 74, ¶ 22 ("Colorado evidentiary rules afford a party presenting rebuttal evidence significant leeway so long as the evidence rebuts some portion of an opposing party's claim.").[5]

---

[5] Because we conclude that Schrum's testimony was proper rebuttal testimony, we need not reach Maniz's contention that Schrum's testimony violated the trial court's discovery sanction.

VII. Prosecutorial Misconduct

¶ 52     Maniz contends that the prosecutor committed misconduct during his opening statement and closing argument because he (1) misstated the law regarding Maniz's bond condition; (2) expressed a personal opinion about one of the underlying offenses; and (3) called for the jury to convict in order to protect the community.  We discern no reversible error.

A.     Legal Principles and Standard of Review

¶ 53     A prosecutor must "scrupulously avoid comments that could mislead or prejudice the jury." *Domingo-Gomez v. People*, 125 P.3d 1043, 1049 (Colo. 2005).  To review the prosecutor's conduct, we use a two-step analysis.  *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010).  First, we evaluate whether the prosecutor's conduct was improper under the totality of the circumstances.  *Id.*  Second, if improper, we determine whether the misconduct warrants reversal under the applicable standard of review.  *Id.*; *see also People v. Robinson*, 2019 CO 102, ¶ 18.

¶ 54     Where, as here, the claims of prosecutorial misconduct are unpreserved, we review them for plain error.  *Hagos v. People*, 2012 CO 63, ¶ 14.  To meet this standard, the conduct must be

"flagrantly, glaringly, or tremendously improper" such that it "so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the jury's verdict." *Domingo-Gomez*, 125 P.3d at 1053 (citation omitted). "Prosecutorial misconduct in closing argument rarely constitutes plain error." *People v. Smalley*, 2015 COA 140, ¶ 37; *see also Hagos*, ¶ 23 (noting that reversals on plain error review "must be rare to maintain adequate motivation among trial participants to seek a fair and accurate trial the first time").

### B. Analysis

#### 1. "No Alcohol" Condition

¶ 55 When discussing the bond conditions during closing argument, the prosecutor stated,

> "[W]ell, does that mean that he's never allowed to touch a beer? Does that mean he's never allowed to be around a beer? Yes, it does. It says "no alcohol." You're not supposed to be around it, you're not supposed to be drinking it, you're not supposed to be looking at it. No alcohol means no alcohol.

Maniz contends that the prosecutor misstated the law because his broad description of the bond condition, "No Alcohol," was not a reasonable interpretation of the bail bond statute, which states that

a court may order a defendant to "abstain from the use of alcohol." § 16-4-105(6)(a), C.R.S. 2024.

¶ 56    We reject Maniz's contention because the prosecutor's comment did not describe the law regarding the court's authority to impose bond conditions.  Instead, he was arguing about the bond conditions specific to Maniz — one of which was simply "No Alcohol."  While perhaps inartful or hyperbolic, the prosecutor's comment was not a flagrantly or obviously improper interpretation of that condition, given its broad wording.  *See People v. McMinn*, 2013 COA 94, ¶ 60 ("[B]ecause arguments delivered in the heat of trial are not always perfectly scripted, reviewing courts accord prosecutors the benefit of the doubt when their remarks are ambiguous or simply inartful.").  Moreover, assuming without deciding that the prosecutor misinterpreted the bond condition, his comment was brief and not repeated, so any error was not plain. *See People v. Marko*, 2015 COA 139, ¶¶ 217-218 (holding no plain error for ambiguous statements that were brief and not emphasized), *aff'd on other grounds*, 2018 CO 97.

## 2. Personal Opinion

¶ 57　　In commenting on the underlying crimes in Case No. 20CR266, the prosecutor said to the jury during his closing argument, "[Y]ou heard from the Court earlier that he was charged with vehicle eluding, which is *pretty dangerous stuff*.  In fact, it's a *very dangerous* felony."  (Emphasis added.)

¶ 58　　Maniz contends that the prosecutor's description of eluding as dangerous was an improper expression of personal opinion.  *See People v. Fortson*, 2018 COA 46M, ¶ 14 ("[I]t is improper for a prosecutor to make remarks that evidence personal opinion . . . .").  But even if that were the case, the jury was instructed that it could only consider Maniz's vehicular eluding for the purpose of determining whether Maniz violated a condition of the protection order designed to protect the protected person from imminent danger to life or health.  *See Marko*, ¶ 195 ("[W]e presume jurors understand and heed jury instructions.").  Therefore, to the extent the prosecutor's brief remarks prejudiced the jury, they did so only with respect to the charge of violation of a protection order, and we have already vacated that conviction.

### 3. Protecting the Community

¶ 59 In opening statements, the prosecutor said, "I'm asking you to hold Mr. Maniz accountable for his behavior. This information, these charges are an important way of supporting the community in making sure all is safe."

¶ 60 Then, in closing argument, the prosecutor made two similar comments:

- "[T]here are no small cases, ladies and gentlemen. The entire community rests on the fact that crimes are enforceable. And the second they're not, the community — and I don't mean to be hyperbolic — but the community stops functioning."

- "I'm asking you to help protect our community, to keep society together. Even on a dumb case like this, even on a guy who just drank alcohol when he wasn't supposed to, I'm asking you to hold him to that. Help society stick together."

Maniz didn't object to any of these statements.

¶ 61 We agree with Maniz that these comments were improper. *See People v. Ortega,* 2015 COA 38, ¶ 54 ("[A] 'prosecutor may not urge

26

jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking.'" (quoting *United States v. Monaghan*, 741 F.2d 1434, 1441 (D.C. Cir. 1984))). We disagree, however, that reversal is required.

¶ 62    While the comments were repeated, they were not, in the aggregate, more pervasive or inflammatory than the improper commentary in *Ortega*, which a division of this court concluded was harmless. *Id.* at ¶¶ 53-55. In that case, the prosecutor told the jury,

> I have to get you to care. Why should you care about this crime? This isn't a robbery. This isn't a homicide. Why should you care? You should care for this city. We do not want an open drug market in Acacia Park right in the heart of Colorado Springs. We do not want an open drug market directly across the street from Palmer High School. We want people to have jobs and to be productive members of society. We don't want them to be drug dealers.
>
> Now, this is marijuana. I am not going to ask you to care about marijuana. Care about the laws of this state that say distribution of marijuana is illegal. Care about the laws of this state and find the defendant guilty.

*Id.* at ¶ 48.

¶ 63     The division in *Ortega* concluded that the improper comments did not merit reversal because the closing argument was otherwise proper, two witnesses identified the defendant, and the jury was "instructed to apply the rules of law to the evidence presented at trial."  *Id.* at ¶ 55.

¶ 64     Significantly, the error in *Ortega* was preserved, so the division analyzed reversibility under the harmless error standard rather than the plain error standard applicable here.  *Id.*  And like in *Ortega*, (1) the jury in this case was properly instructed to apply the rules of law to the evidence and (2) substantial evidence supported that Maniz knowingly violated the alcohol-related conditions of his bail bonds.  Furthermore, defense counsel's lack of objection to any of the three statements indicates that "the live argument, despite its appearance in a cold record, was not overly damaging."  *People v. Rodriguez*, 794 P.2d 965, 972 (Colo. 1990) (citation omitted).

¶ 65     For these reasons, we conclude that the improper comments do not cast "serious doubt on the reliability of the jury's verdict."  *Domingo-Gomez*, 125 P.3d at 1053.

## VIII. Cumulative Error

¶ 66     Lastly, Maniz argues that the cumulative effect of the court's errors deprived him of a fair trial.  We disagree.

¶ 67     Even where we might deem numerous errors harmless individually, the aggregation of the errors may show that the defendant did not receive a fair trial.  *Howard-Walker v. People*, 2019 CO 69, ¶ 24.  "For reversal to occur based on cumulative error, a reviewing court must identify multiple errors that collectively prejudice the substantial rights of the defendant, even if any single error does not."  *Id.* at ¶ 25.  For purposes of this analysis, we do not distinguish between actual and assumed errors.

¶ 68     Two errors — insufficient evidence and the prosecutor's "improper opinion" commentary — involved only Maniz's conviction for violation of a protection order.  We vacated that conviction, and we don't perceive that these errors caused any prejudice on the remaining charges of violation of bail bond conditions.

¶ 69     That leaves the hearsay error and two instances of prosecutorial misconduct.  The hearsay error related to the status of Maniz's bond condition in Case No. 20CR266 and was, at most, minimally prejudicial.  Because Maniz does not argue lack of

personal knowledge on appeal, preclusion of the "hearsay" statements would not have prevented the jury from hearing Officer Mendoza's primary testimony that the bond conditions were still in place when Maniz was found with the beer. Moreover, the appearance bond for Case No. 20CR266 was itself admitted into evidence, and it stated that Maniz's bond conditions would remain in effect "until entry of an order for deferred prosecution or deferred judgment, plea of guilty, nolo contendere, or conviction." As there was no evidence that any of these events had occurred, the jury could also infer, independent of Officer Mendoza's testimony, that the bond conditions were in effect at the relevant time. *See Luna,* ¶¶ 16-18 ("[W]here the record contains evidence that a bond has been issued prior to the charged date of violation, and no evidence is offered that the bond was no longer in effect, a reasonable inference may be drawn that the bond was in effect at the time of the charged violation.").[6]

---

[6] Although the division in *People v. Luna* drew this conclusion in the context of a sufficiency analysis and did not consider whether improper admission of other evidence was prejudicial, it nevertheless supports the notion that the bail bond condition itself is additional evidence supporting Maniz's conviction. 2013 COA 67, ¶¶ 7-9.

¶ 70     Likewise, the prosecutor's description of the "No Alcohol" bond condition was brief, isolated, and inconspicuous.  It was also minimally prejudicial.  *See People v. Vialpando*, 2022 CO 28, ¶ 42.

¶ 71     The prosecutor's repeated calls for the jury to protect the community likely had some prejudicial impact.  *See Ortega*, ¶ 54; *see also Vialpando*, ¶ 43.  Even so, the trial court diminished the impact by properly instructing the jury (1) on the elements for violation of bond conditions; (2) that opening statements and closing arguments are not evidence; and (3) that the jury could find Maniz guilty only if there was evidence beyond a reasonable doubt that he violated the bail bond conditions.  *Cf. Vialpando*, ¶ 41 (considering jury instructions when analyzing prejudicial impact of improper reasonable doubt analogies).

¶ 72     Overall, we conclude that the cumulative effect of these actual and assumed errors was slight, especially considering the other evidence of Maniz's guilt: exhibits that established the bond conditions, testimony from a witness explaining that she reviewed the bond conditions with Maniz, testimony that officers found Maniz smelling of alcohol with an open beer can between his legs, and body camera footage that showed Maniz alone in the living

31

room with the two beer cans near him.  *See id.* at ¶ 46.

Accordingly, the aggregate effect of the errors did not deprive Maniz

of a fair trial.  *See Howard-Walker*, ¶ 24.

## IX.   Disposition

¶ 73    The judgment of conviction is affirmed in part and vacated in

part, and the case is remanded to the trial court with directions to

vacate Maniz's conviction for violation of a protection order and

correct the mittimus accordingly.

JUDGE FREYRE and JUDGE GROVE concur.